## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| |
|---|
| **ANTONIO DÍAZ CORTÉS and GLORIA TIRADO PÉREZ a/k/a GLORIA DÍAZ,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**NELSON ROMÁN TIRADO.**<br><br>    **Defendants.**<br><br><br>                          **TRIAL BY JURY DEMANDED** |

## <u>COMPLAINT</u>

**TO THE HONORABLE COURT:**

COMES NOW the plaintiffs, Antonio Díaz Cortés ("Mr. Díaz") and Gloria Tirado Pérez ("Mrs. Tirado") (hereinafter jointly referred to as "Plaintiffs"), by and through the undersigned counsel, hereby respectfully ALLEGE, STATE and PRAY:

## I.      INTRODUCTION

Defendant Nelson Román Tirado's ("Román") shameless, blatant, and ultimately successful efforts to strip his elderly relatives of their most valuable asset form the heart of this action. This case stands as one of the most egregious examples of deceitful, underhanded, and outright fraudulent conduct perpetrated by a trusted family member under the guise of providing legal assistance.

Román's deception was unsustainable in the long term, but it endured long enough to cause grievous harm. As the nephew of Plaintiffs – an elderly married couple, both now over ninety years old – and as a licensed attorney, Román occupied a position of profound trust. Plaintiffs

relied on him for legal matters in Puerto Rico for many years, confident that he would act in their best interests.

Instead, he exploited that trust, their lack of legal sophistication, and the inherent vulnerability of advanced age to enrich himself at their expense. Through calculated misrepresentations, he manipulated his elderly relatives into transferring to him the only real property they owned in Puerto Rico. He did so without any genuine intention of fulfilling the contractual obligations he undertook – obligations that were expressly tied to resolving title issues, facilitating a sale of the property, and distributing the proceeds among heirs.

What follows is a detailed account of the calculated steps Defendant Román Tirado took to gain control of Plaintiffs' property, the promises he made and failed to honor, and the repeated evasions and refusals that have left Plaintiffs deprived of their property and without the benefit of the bargain they were promised.

## II.    PARTIES

1.    Plaintiff Antonio Díaz Cortés is of legal age, retired, married to plaintiff Gloria Tirado Pérez, and resident of the state of Virgina, USA.

2.    Plaintiff Gloria Tirado Pérez, also known as Gloria Díaz, is of legal age, retired, married to plaintiff Antonio Díaz Cortés, and resident of the state of Virgina, USA.

3.    Defendant Nelson Román Tirado, Esq. is of legal age, domiciled in Puerto Rico, and at all relevant times was an attorney authorized to practice law in Puerto Rico. He is also the nephew of Plaintiffs.

## III.    JURISDICTION AND VENUE

4.    This Court also has jurisdiction to entertain the claims pleaded herein due to the existence of complete diversity of citizenship under 28 U.S.C. §§1332(a)(2). At the moment of

filing of this complaint, the amount of damages suffered by each of the Plaintiff exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred within this judicial district.

## IV.      FACTS

6.      Plaintiffs Antonio Díaz Cortés and Gloria Tirado Pérez are an elderly married couple, both of whom are currently over 90 years old. Although their family roots originate in Puerto Rico, they have resided in the continental United States for several decades and currently live in Front Royal, Virginia.

7.      As a result, over the years, they have relied on individuals they believed to be close and trustworthy family members to manage their affairs in Puerto Rico.

8.      In particular, Plaintiffs placed their trust in Olga Iris Tirado Flores – Gloria Tirado's niece – and her son, their grandnephew, defendant Nelson Román Tirado, a practicing attorney on whom they relied to handle their legal matters and for legal advice. Given both the familial relationship and Mr. Tirado's status as an attorney, Plaintiffs entrusted him to manage their legal affairs in Puerto Rico for many years.

9.      So great was that trust that, on November 8, 2012, Plaintiffs executed a "General Durable Power of Attorney" before a notary public in Maricopa County, Arizona, appointing Olga Iris Tirado Flores, as their attorney-in-fact for matters in Puerto Rico. That power of attorney was subsequently protocolized in Puerto Rico through Deed of Protocolization Number 25, dated December 17, 2012, before attorney and notary Tania E. Santiago Caro, thereby rendering it valid and enforceable under Puerto Rico law.

3

10.    On May 30, 1997, Plaintiffs acquired a seventy-five percent (75%) interest in a property located in Barrio Ensenada, Municipality of Rincón, Puerto Rico, which is registered as follows (hereinafter, the "Property"):

> ---RUSTICA: En el barrio Ensenada del término municipal de Rincón, con área superficial de CUATRO PUNTO CINCO MIL QUINIENTOS SESENTA Y DOS CUERDAS (4.5562 cdas) de terreno equivalentes a DIECISIETE MIIL NOVECIENTOS SIETE PUNTO SETECIENTOS DIECISEIS (17,907.716 mc) METROS CUADRADOS. En lindes por el Norte, con Francisco Velázquez, Juan Mercado y The American Railroad Company; por el Sur, con camino municipal y por el Oeste, con la zona marítima, Juan Mercado, Francisco Velázquez y predio segregado. ----------------------------------------------------------------------

> ---Inscrita en el folio doscientos veintinueve (229 vto.), del tomo dieciséis (16) de Rincón, finca número seiscientos cuarenta y siete (647).--------------------------------

11.    Plaintiffs acquired the 75% ownership interest in the Property through Deed Number 4, dated May 30, 1997, titled "Deed of Sale with Deferred Payment."

12.    On the date of the transfer, and to this day, the remaining 25% ownership interest in the Property is currently registered in the names of Carlos José Gastón Vallejo (married to Patricia Mercado Watting) and Carlos Hernández Pérez (married to Rose Ann Camalo Cuccio), each holding 12.5%. Plaintiffs, however, dispute this and maintain that they are the rightful owners of one hundred percent (100%) of the Property. While resolution of this issue extends beyond the immediate scope of this Complaint, it was nevertheless one of the legal tasks that Defendant Nelson Román Tirado expressly undertook to handle for Plaintiffs, including initiating the necessary legal proceedings to clear title and secure their full ownership.

13.    In 2019, Plaintiffs were seeking to sell the Property and distribute the proceeds amongst several descendants and heirs. Understandably, they turned to Mr. Tirado for guidance and legal assistance with the steps required to carry out the transaction.

14.    When Plaintiffs reached out to Mr. Tirado for assistance, he saw an opportunity to exploit the situation for personal gain. Recognizing the Property's value as prime real estate, he

4

sought to enrich himself at their expense. Taking advantage of Plaintiffs' deep trust in him, their limited legal knowledge, and the natural vulnerability that accompanies advanced age, Mr. Tirado represented that there were multiple issues affecting the Property's title which impeded its sale. He asserted that he could resolve those issues through his "legal services".

15.    Plaintiffs agreed to compensate him with one-sixth (1/6) of the proceeds from the eventual sale of the Property, contingent upon his completion of the necessary legal services.

16.    However, it was at this point that Mr. Tirado seized upon their trust and vulnerability. He falsely represented that, in order to carry out the legal work, it was essential that title to the Property be transferred to his name.

17.    Relying on defendant's false statements, Plaintiffs donated and transferred 75% of the ownership of the property to Mr. Tirado via Deed of Donation No. 51, executed on October 20, 2019, before Notary Public Nicolemarie Peña Cartagena.

18.    The circumstances surrounding the purported donation further underscore the dubious and misleading nature of the transfer. To begin with, upon information and belief, the notary who authorized the Deed of Donation, Nicolemarie Peña Cartagena, Esq., was – and at all times relevant to this Complaint, remains – a close friend of Defendant Nelson Román Tirado. Moreover, the Plaintiffs did not personally execute the donation but did so through their attorney-in-fact for Puerto Rico matters, Defendant's mother, Olga Tirado.

19.    Before the deed was executed, Ms. Peña Cartagena, acting at Mr. Tirado's direction, sent Plaintiffs a letter instructing them to execute an additional power of attorney. This new instrument would specifically authorize Mrs. Tirado to: (1) sign or execute any donations deed on their behalf; and (2) sign or execute any and all documents necessary to donate or transfer the Property.

20.     On September 24, 2019, Plaintiffs executed the new "Specific Power of Attorney" ("Specific POA"), as instructed by Defendant Roman Tirado and Ms. Peña Cartagena.

21.     The Specific POA was protocolized in Puerto Rico. This was accomplished through Deed of Protocolization of Special Power of Attorney No. 50, dated October 20, 2019 (hereinafter, the "Deed of Protocolization of Special POA"), executed before Ms. Peña Cartagena.

22.     That same day, October 20, 2019, the Plaintiffs, through Mrs. Olga Tirado, executed Deed of Donation No. 51 and donated and transferred title to their property located in Barrio Ensenada, Rincón, Puerto Rico to defendant Nelson Roman Tirado.

23.     This donation and transfer, as previously stated was part of an express and conditional agreement. As part of that agreement, the Defendant committed to performing, among others, the following tasks: (1) recover the 25% ownership interest currently registered in the names of Carlos José Gastón Vallejo (married to Patricia Mercado Watting) and Carlos Hernández Pérez (married to Rose Ann Camalo Cuccio), each holding 12.5%; (2) resolve any pending litigation with Val Vista Condominiums related to land encroachment; (3) investigate and correct inconsistencies in the title history, including matters related to the "Black Eagle" parcel and the Toubes and Steinborn segregations; (4) coordinate the segregation and donation of 500 square meters to Ms. Nilda Couvertier (now Nilda Kuntz); (5) facilitate the eventual sale of the remaining parcel and equitably distribute the proceeds among the designated heirs and descendants; and (6) maintain regular communication with our clients and provide updates regarding the legal status of the property.

24.     However, contrary to his prior representations to Plaintiffs, Mr. Román Tirado instructed Notary Ms. Peña Cartagena to draft the Deed of Donation as a gratuitous donation, omitting any reference to the agreement reached with his aunt and uncle. Because Plaintiffs executed the Deed of Donation through Mrs. Olga Tirado, Nelson's mother, they were not

provided a copy prior to execution and only learned of its contents – much to their dismay – when it became evident that Defendant Román Tirado had no intention of fulfilling his contractual obligations. Plaintiffs were never consulted regarding the execution of the Deed, nor were they given the opportunity to review or approve its contents before it was signed by Mrs. Olga Tirado, Defendant's mother, on their behalf. Indeed, Plaintiffs were never provided copies of the legal documents executed by Mrs. Tirado.

25.     The donation and transfer of the Property were wholly unnecessary for Defendant Román Tirado to perform the legal tasks he had agreed to undertake on behalf of Plaintiffs. Nevertheless, the donation was made as part of a conditional agreement, expressly tied to the faithful fulfillment of his professional obligations. Yet, to this day, Mr. Román Tirado has utterly failed to honor those obligations, abandoning the very duties that formed the basis of the transfer.

26.     In January 2020, Mr. Michael Díaz ("Michael"), the son of the Plaintiffs, communicated with Román Tirado regarding the status of the efforts undertaken pursuant to the agreement reached with his elderly parents.

27.     Defendant Román Tirado falsely represented to Michael that such efforts were underway and agreed to appear before a notary to sign a Memorandum of Understanding stating that the property had been transferred to his name, so that he could facilitate all legal matters pertaining to the property in order to sell it.

28.     Believing, albeit incorrectly, that Defendant Román Tirado was acting in their best interests, Plaintiffs let the matter rest and waited patiently for him to fulfill his contractual obligations and sell the property. However, as the years passed, Plaintiffs saw no results, and communications with Defendant Román Tirado became increasingly scarce.

29.     On November 16, 2024, Michael again reached out to Defendant Román Tirado, requesting, among other things, to set up a phone call to get up to speed on the remaining actions needed to make the property free and clear of any issues that would prevent its sale.

30.     On November 18, 2024, Defendant Román Tirado responded to Plaintiff, stating, among other things that it would be great to coordinate a meeting so I can explain everything to you and join forces to close out these legal affairs for the benefit of the family. He also falsely claimed that he had been working on all the affairs.

31.     On December 7, 2024, Michael, on behalf of his parents, met virtually with Defendant Román Tirado and established action items to complete the remaining legal tasks. On December 9, 2024, Michael sent the minutes of the meeting to Defendant Román Tirado via email. This was the last time Defendant Román Tirado responded to, or otherwise communicated with, Plaintiffs or Michael.

32.     After this exchange, Plaintiffs and Michael attempted to communicate with Defendant Román Tirado on multiple occasions, without success. Defendant Román Tirado has since ceased all communications with Plaintiffs.

33.     On June 30, 2025, Plaintiffs sent Defendant Román Tirado a notification letter requiring him to execute a public deed returning the property to Plaintiffs, as he had failed to fulfill the legal tasks he was contractually obligated to perform for approximately six years. Plaintiffs also advised that they no longer had any interest in continuing with his legal services. Defendant Román Tirado, however, did not respond.

34.     It is clear that Defendant Roman Tirado's aim all along was to acquire Plaintiff's 75% in the property and that he never intended to perform the legal tasks agreed upon.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION: CONTRACTUAL FRAUD OR CONTRACTUAL DOLO

35.    The allegations in paragraphs 1 to 30 are hereby re-alleged as if fully incorporated herein.

36.    Under Puerto Rican law, contractual fraud or *dolo* has two fundamental applications. Márquez v. Torres Campos, 111 D.P.R. 854, 863 (1982). Contractual fraud can occur at the moment of contract formation or during the execution of the contract. Pérez Rosa v. Morales Rosado, 172 D.P.R. 216, 229 (2007). The first type of *dolo* renders the contract void due to a lack of genuine consent, as it is obtained through insidious machinations. S.L.G. Ortiz-Alvarado v. Great Am., 182 D.P.R. 48, 63 (2011) (citing Márquez, 111 D.P.R. at 863). This includes deceit, fraud, misrepresentation, undue influence, etc. Márquez, 111 D.P.R. at 863; Cruz v. Autoridad de Fuentes Fluviales, 76 D.P.R. 312, 319-320 (1954).

37.    However, *dolo* does not necessarily result in the annulment of a contract in all circumstances. S.L.G. Ortiz-Alvarado, 182 D.P.R. at 63. For *dolo* to result in the annulment of a contract, it must be severe and not employed by both contracting parties. Id. n the contrary, incidental *dolo* only gives rise to compensation for damages caused. Id at 64.

38.    Under Puerto Rico law, consent given by error, due to undue influence, under violence, by intimidation, or deceit shall be void. Burk v. Paulen, 100 F. Supp. 3d 126, 134 (D.P.R. 2015).

39.    "When an obligation becomes a nullity, the appropriate remedy is to for the parties 'to restore each other the things which would have been the object of the contract with their fruits, and the value with its interest, without prejudice to the provisions contained in the following sections." Burk v. Paulen, 100 F. Supp. 3d 126, 134–35 (D.P.R. 2015) (citing P.R. Laws Ann. tit.

9

31, § 3514; Century Packing Corp. v. Giffin Specialty Equip. Co., LLC, 438 F.Supp.2d 16, 26 (2006)).

40.      **A person's education, social and economic status, his relations, and the type of business in which he is engaged are significant when determining if consent was valid**. (Emphasis added). Id at 135 (citing Citibank v. Dependable Ins. Co., 121 D.P.R. 503, 519 (1988)).

41.      In this case, Defendant Román Tirado's actions constitute **contractual dolo at the moment of formation**, as his consent to the agreement with Plaintiffs was procured through false representations and deliberate concealment of material facts. Plaintiffs, an elderly married couple both over ninety years old, relied on Román's familial relationship, his position as an attorney, and years of trust to make decisions regarding the disposition of their only real property in Puerto Rico.

42.      Defendant falsely represented that multiple title and legal issues prevented the sale of the Property, and that transferring title to his name was essential to resolving these matters. These statements were knowingly false when made. At no point was such a transfer necessary for Defendant to perform the agreed-upon legal work.

43.      Defendant further concealed the true nature of the Deed of Donation by instructing Notary Peña Cartagena—his romantic partner—to draft it as a gratuitous donation, omitting all reference to the conditional agreement and to his obligations under it. Plaintiffs, acting through their attorney-in-fact (Defendant's mother), were not provided a copy of the deed before execution and only discovered its actual contents after the fact, when Defendant had already secured title to the Property.

44.      Defendant deliberately misled Plaintiffs with the specific intent to induce them into transferring their ownership interest, without ever intending to fulfill his obligations.

45.      Given the disparity in age, knowledge, and professional expertise between the parties, and the fiduciary-like trust inherent in both their familial and attorney-client relationship,

10

Plaintiffs' consent to the Deed of Donation was not freely given but was instead vitiated by deceit and undue influence, rendering the transfer null and void under Puerto Rico law.

46.    As a direct and proximate result of Defendant's contractual dolo, Plaintiffs have been unlawfully deprived of their 75% interest in the Property for nearly six years, during which time they have received neither the promised legal services nor any proceeds from the intended sale

47.    Consequently, Plaintiffs seeks the annulment of the agreement, he return of the Property with its fruits and value, plus interest, and damages in an amount of no less than $1,000,000.00.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

48.    The allegations in paragraphs 1 to 30 are hereby re-alleged as if fully incorporated herein.

49.    Under Puerto Rico law, the elements of a cause of action for breach of contract are (1) a valid contract, and (2) a breach by one of the parties to the contract. Torres v. Bella Vista Hospital, Inc., 523 F.Supp.2d 123, 152 (D.P.R.2007) (citing F.C. Imports, Inc. v. First Nat'l Bank of Boston, 816 F.Supp. 78, 93 (D.P.R.1993); Unisys P.R., Inc. v. Ramallo Brothers Printing, Inc., 128 D.P.R. 842 (P.R.1991)).

50.    As is well-known, the requirements for a valid contract under Puerto Rico law are as follows: "(1) consent of the contracting parties; (2) a definite object which may be the subject of contract; and (3) cause for the obligation that is being established." Yacht Caribe Corp. v. Carver Yacht LLC, 270 F. Supp. 3d 547, 555 (D.P.R. 2017).

51.    "Puerto Rico law makes clear that contracts shall be binding, regardless of the form in which they were executed, 'provided the essential conditions required for their validity

11

exist.'" <u>Markel American Ins. Co. v. Díaz-Santiago</u>, 674 F.3d 21, 31 (1st Cir. 2012); citing 31 L.P.R.A. § 3451.

52.     In this case, Defendant agreed he would perform legal work to resolve outstanding title issues, recover the disputed 25% interest held by third parties, address pending litigation, correct title inconsistencies, coordinate a segregation and donation of a parcel, and ultimately facilitate the sale of the Property and distribute the proceeds among designated heirs. The Property and Defendant's promised legal services constituted the definite object of the contract, and the mutual exchange of the Property for such services provided valid cause for the obligations undertaken.

53.     Defendant, however, materially breached the agreement by failing to carry out any of the core legal services he was contractually obligated to perform. He did not recover the remaining 25% interest, resolve the pending litigation, correct title issues, coordinate the segregation and donation, or take any substantive steps to prepare the Property for sale.

54.     Instead, Defendant provided repeated false assurances to Plaintiffs and their son Michael, including claims that he was actively working on the matters, all while taking no meaningful action toward fulfilling his contractual obligations. This pattern of misrepresentation continued for nearly six years, culminating in Defendant's complete cessation of communication with Plaintiffs despite their repeated outreach.

55.     Defendant's failure to respond to Plaintiffs' June 30, 2025 notification letter demanding the return of the Property and termination of his legal services further evidences his breach and unwillingness to perform under the agreement.

56.     As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been deprived of their Property, have received no benefit from Defendant's promised services, and

have suffered significant damages, including the loss of use, enjoyment, and economic benefit of their 75% ownership interest for nearly six years.

57.    Plaintiffs are therefore entitled to all remedies available under Puerto Rico law for breach of contract, including the return of the Property, restitution of any fruits or value derived from it during Defendant's possession, interest, and damages in an amount of no less than $1,000,000.00.

## THIRD CAUSE OF ACTION: DECLARATORY JUDGMENT

58.    The allegations in paragraphs 1 to 30 are hereby re-alleged as if fully incorporated herein.

59.    "The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties in a case of actual controversy." Xynergy Healthcare Cap. II LLC v. Municipality of San Juan, 516 F. Supp. 3d 137, 144–45 (D.P.R. 2021) (citing Almonte v. Administracion de Correccion, 15 F. Supp. 2d 180, 181 (D.P.R. 1998).

60.    Thus, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not  further relief is or could be sought." 28 U.S.C.A. § 2201.

61.    An actual controversy is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Almonte, (quoting Diagnostic Unit Inmate Council v. Films Inc., 88 F.3d 651, 653 (8th Cir. 1996)).

62.    "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity,

13

and controversy giving rise to the proceeding." <u>Richmond Steel, Inc. v. Legal and General Assur.</u> <u>Soc., Ltd.</u>, 799 F. Supp. 234, 237 (D.P.R. 1992)

63.    "In determining whether to grant declaratory relief, a court should consider whether a declaratory judgment would "clarify the legal questions at issue and expedite resolution of the controversy." <u>Xynergy Healthcare Cap. II LLC</u>, 516 F. Supp. at 145 (citing <u>Richmond Steel, Inc.</u>, 799 F. Supp. at 237; which cites <u>Metro. Property & Liability Ins. Co. v. Kirkwood</u>, 729 F.2d 61, 62 (1st Cir. 1984)).

64.    In the present case, an actual controversy exists between Plaintiffs and Defendant regarding their respective rights and obligations in connection with the Property located in Rincón, Puerto Rico. Said Property was donated and transferred to Defendant based on his false representations that such transfer was legally necessary in order for him to render legal services, clear title, and arrange for its eventual sale on Plaintiffs' behalf.

65.    Plaintiffs contend that these representations were knowingly false, that Defendant had no legitimate reason to require title in his own name to perform the agreed services, and that Defendant thereby induced Plaintiffs to part with their Property under false pretenses.

66.    Moreover, even after securing title to the Property, Defendant failed to perform the very services for which the transfer was allegedly required.

67.    As a result, a substantial and immediate controversy exists as to: (a) whether Plaintiffs remain the rightful and equitable owners of the Property; (b) whether Defendant obtained any valid legal or equitable interest therein through misrepresentation and breach of contract; and (c) whether Defendant may lawfully transfer, encumber, or otherwise dispose of the Property.

68.    Specifically, Plaintiffs seek a declaration that: (a) Plaintiffs are the rightful and equitable owners of the Property; (b) the transfer of title to Defendant, procured through misrepresentation and coupled with Defendant's breach of contract, conferred no lawful or

equitable rights upon him; and; (c) any attempt by Defendant to sell, transfer, encumber, or otherwise dispose of the Property would be null, void, and without legal effect.

<u>**FOURTH CAUSE OF ACTION: DAMAGES**</u>

69.    The allegations in paragraphs 1 to 30 are hereby re-alleged as if fully incorporated herein.

70.    Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801, establishes that "[t]he person who through fault or negligence causes damage to another, is obliged to restore [the aggrieved party]."

71.    "Breach of duty has, as its name implies, two sub-elements: duty and breach. In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." <u>Id</u> (citing <u>Ortiz v. Levitt & Sons of P.R., Inc</u>., 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973)).

72.    "Foreseeability is a component of the breach [element] because a defendant only breaches [its] duty if [it] acted (or failed to act) in a way that a reasonably prudent person would foresee as creating undue risk." <u>Martinez-Suarez v. Mansiones de Garden Hills Apartments</u>, 556 F. Supp. 3d 1, 14 (D.P.R. 2021), <u>appeal dismissed,</u> No. 21-1808, 2022 WL 1087021 (1st Cir. Jan. 6, 2022).

73.    "In other words, a person breaches the duty of reasonable care when his actions create reasonably foreseeable risks. A plaintiff, then, must show the foreseeable risks created by defendant's acts or omissions in order to carry his burden as to this element of a tort claim." <u>Vazquez-Filippetti</u>, 504 F.3d at 49.

74.    "An actor is negligent if he fails to exercise due diligence to prevent a foreseeable injury." <u>Ayala v. Kia Motor Corp.</u> (D.P.R. Sept. 30, 2022); citing <u>Malave-Felix</u>, 946 F.2d at 972 ("a person is liable for injuries that a prudent person reasonably could anticipate."); *see* <u>Rivera-</u>

<u>Santiago v. United States</u>, Civ. No. 08-1266, 2009 WL 702235, at *3 (D.P.R. Mar. 11, 2009)(holding that "negligence ensues if the injuries could be foreseen or reasonably anticipated by a reasonable and prudent person.").

75.    Defendant Román Tirado owed Plaintiffs a duty to act with the care, diligence, and honesty expected of a reasonable and prudent attorney—and family member—entrusted with the legal affairs of two elderly individuals over ninety years of age. This duty arose not only from general principles of tort law, but also from the specific attorney-client relationship and the trust inherent in their close familial bond.

76.    Defendant breached that duty by deliberately misrepresenting the necessity of transferring the Property to his name, concealing the true nature of the Deed of Donation, and failing to carry out any of the legal tasks he had agreed to perform.

77.    Defendant's actions and omissions foreseeably created an undue risk of harm to Plaintiffs, including the loss of their only real property in Puerto Rico, deprivation of its use and enjoyment, and the inability to liquidate the asset and distribute proceeds among their heirs as they had intended. A reasonably prudent person—and certainly a licensed attorney—would have foreseen that such conduct would cause precisely the damages suffered by Plaintiffs.

78.    As a direct and proximate result of Defendant's negligent, reckless, and fraudulent acts and omissions, Plaintiffs have suffered—and continue to suffer—substantial harm, including but not limited to: a. Loss of their 75% ownership interest in the Property; b. Loss of the use, enjoyment, and economic benefits derived from the Property; c. Delay and obstruction in liquidating the asset and distributing proceeds to heirs; and d. Emotional distress, anxiety, and frustration caused by Defendant's betrayal and prolonged refusal to honor his obligations.

79.    Pursuant to Article 1536 of the Puerto Rico Civil Code, 31 L.P.R.A. § 10801, and applicable jurisprudence, Defendant is liable to Plaintiffs for damages in an amount of no less than $1,000,000.00, proximately caused by his acts and omissions, together with interest, costs, and attorneys' fees as allowed by law

## FIFTH CAUSE OF ACTION: FRAUD

80.    The allegations in paragraphs 1 to 30 are hereby re-alleged as if fully incorporated herein.

81.    "In order to prove fraud under Puerto Rico law, a plaintiff must establish: (1) that a false representation was made; (2) that the plaintiff reasonably and foreseeably relied thereon; (3) that the plaintiff was injured by his reliance; and (4) that the defendant intended to defraud the plaintiff." Microsoft Corp. v. Computer Warehouse, 83 F. Supp. 2d 256, 262 (D.P.R. 2000) (citing Wadsworth, Inc. v. Schwarz–Nin, 951 F.Supp. 314, 323 (D.P.R.1996)).

82.    Defendant Román Tirado knowingly made multiple false representations to Plaintiffs with the intent to induce them to transfer their 75% ownership interest in the Property to him. These included, among others: (a) that the Property could not be sold until various title and legal issues were resolved; (b) that transferring title to his name was essential to performing the necessary legal work; and (c) that he would undertake specific tasks—such as recovering the disputed 25% interest, resolving litigation, correcting title defects, and coordinating a segregation and donation—that would facilitate the sale of the Property and the distribution of proceeds.

83.    Defendant also misrepresented to Plaintiffs' son, Michael Díaz, on multiple occasions that he was actively working to resolve these matters, agreed to memorialize the arrangement in a Memorandum of Understanding, and even participated in a December 7, 2024 meeting to establish "action items," despite having no genuine intention of completing the work.

17

84.    Plaintiffs reasonably and foreseeably relied on Defendant's false statements. Given his position as their nephew, a licensed attorney, and someone who had managed their legal affairs in Puerto Rico for many years, Plaintiffs had no reason to doubt his representations. Their advanced age, lack of legal sophistication, and physical distance from Puerto Rico made them especially vulnerable to his deceit.

85.    Plaintiffs' reliance on Defendant's false statements was the direct cause of their injury. In reliance on those representations, Plaintiffs executed the Specific Power of Attorney and the Deed of Donation, transferring their ownership interest in the Property to Defendant without receiving the promised legal services or any compensation.

86.    Defendant's intent to defraud is evident from the totality of his conduct: securing title to the Property through misrepresentations; instructing the notary to omit the conditional terms of the agreement from the Deed of Donation; failing to perform any substantive work toward the promised objectives; providing false updates to create the illusion of progress; and ultimately ceasing all communication when confronted with demands to return the Property.

87.    As a direct and proximate result of Defendant's fraudulent conduct, Plaintiffs have suffered substantial damages, including but not limited to the loss of their 75% interest in the Property, loss of its use and enjoyment, and the deprivation of proceeds from its intended sale.

88.    Defendant's conduct meets all the elements of fraud under Puerto Rico law, and Plaintiffs are entitled to rescission of the Deed of Donation, restitution of the Property with its fruits and value, and an award of compensatory damages, valued in no less than $1,000,000.00, interest, costs, and attorneys' fees as allowed by law.

## SIXTH CAUSE OF ACTION: UNJUST ENRICHMENT

89.    The allegations in paragraphs 1 to 30 are hereby re-alleged as if fully incorporated herein.

90.     "The Puerto Rico Supreme Court recognized a cause of action under the unjust or undue enrichment doctrine in Ortiz-Andújar v. Commonwealth of Puerto Rico, 22 P.R. Offic. Trans. 774, 122 D.P.R. 817 (P.R. 1988)." Gov't of Puerto Rico v. Carpenter Co., 442 F. Supp. 3d 464, 476 (D.P.R. 2020).

91.     The aforesaid doctrine may be invoked "when the laws have not foreseen a situation where a patrimonial shift occurs [and] which shift cannot be rationally explained by the prevalent body of laws." Id at 466; citing Ortiz-Andújar, supra.

92.     "To prove a claim for unjust enrichment under Puerto Rico law, '[t]he following requirements must be present: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause.'" Rivera v. Marriott Int'l, Inc., 456 F. Supp. 3d 330, 339 (D.P.R. 2020); citing Montalvo v. LT's Benjamin Records, Inc., 56 F. Supp. 3d 121, 136 (D.P.R. 2014) (citing Hatton v. Municipality of Ponce, 1994 P.R.-Eng. 909605, 134 D.P.R. 1001, 1994 WL 909605 (1994)); see P.R. LAWS ANN. tit. 31, § 2992.

93.     Defendant Román Tirado has been unjustly enriched at Plaintiffs' expense. By means of false representations and concealment of material facts, Defendant induced Plaintiffs to transfer to him their 75% ownership interest in the Property – prime real estate in Rincón, Puerto Rico – without providing any of the promised legal services or other consideration in return.

94.     This transfer conferred a substantial economic benefit on Defendant: ownership and control of valuable real property, along with the ability to use, enjoy, and potentially profit from it.

95.     Plaintiffs, conversely, suffered a direct and correlative loss in the form of deprivation of their ownership interest, loss of the Property's use and enjoyment, and the inability to sell the Property and distribute proceeds to their heirs as intended.

96.     The nexus between Defendant's enrichment and Plaintiffs' loss is direct and undeniable: Plaintiffs' transfer of the Property was the sole source of Defendant's enrichment, and that transfer occurred solely because of Defendant's misrepresentations and abuse of trust.

97.     There exists no valid legal cause or justification for Defendant's enrichment. The agreed-upon consideration for the transfer – Defendant's performance of specific legal tasks to resolve title issues and facilitate a sale – was never provided. Defendant's inaction, coupled with his refusal to return the Property upon demand, confirms the absence of lawful cause.

98.     No legal precept bars application of the unjust enrichment doctrine in this matter. To the contrary, Puerto Rico law recognizes unjust enrichment as an equitable remedy precisely to prevent the type of wrongful patrimonial shift present here.

99.     As a result, Defendant must restore to Plaintiffs the value of the enrichment obtained, which includes the return of their 75% ownership interest in the Property, together with any fruits, rents, or other benefits derived from it during Defendant's possession, plus interest, costs, and attorneys' fees as allowed by law.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court: (1) enter judgment in their favor and against Defendant in an amount not less than $1,000,000.00, together with reimbursement of costs and attorney's fees; (2) issue an order commanding Defendant to return and the Property to Plaintiffs, restoring title and possession to them; and (3) grant such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY:** That on this same date I electronically filed the foregoing document with the Clerk of Court for the District of Puerto Rico through the CM/ECF for the uploading in the electronic filing system.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico on September 8th, 2025.

**DMR Law**
***Counsel for Plaintiffs***
Capital Center Building
Suite 1101
239 Arterial Hostos
San Juan, PR 00918

<u>s/Maria A. Dominguez</u>
Maria A. Dominguez
USDC-PR No. 210908
m.dominguez@dmrpr.com

<u>s/ Javier F. Micheo Marcial</u>
Javier F. Micheo Marcial
USDC-PR No. 305310
j.micheo@dmrpr.com

<u>s/ Julian R. Rodriguez-Muñoz</u>
Julian R. Rodriguez-Muñoz
USDC-PR No. 308301
j.rodriguez@dmrpr.com

21